United States District Court
Southern District of Texas
**ENTERED**
December 09, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Matthew Payam Shalouei, § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action H-18-4406 |
| Lorie Davis, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
| Respondent. § | |

# Memorandum and Recommendation

Matthew Shalouei is serving life in prison for capital murder. Shalouei filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 8.) Lorie Davis has moved for summary judgment. (D.E. 12.) The court recommends that Davis's motion for summary judgment be granted and Shalouei's petition be denied with prejudice.

## 1. Facts and Proceedings in State Court

In January 2011, Shalouei, then seventeen years old, shot and killed a man while committing a robbery. Police arrested and interrogated Shalouei the following day. Shalouei was charged by indictment with capital murder in December 2013.

After his January 2011 arrest, Shalouei requested counsel and the court appointed Jerome Godinich.

Shalouei's first trial began in June 2015. (D.E. 13-2 at 129.) Shalouei attempted suicide while in custody and a mistrial was declared. (D.E. 13-6 at 6.)

Voir dire examination for Shalouei's second trial began on October 19, 2015. (D.E. 13-4.) After the jury was selected, the trial judge told the selected panel that they may not discuss the case or conduct outside research. (D.E. 13-4 at 156.) The court then asked if

any jurors had questions and two of the selected jurors spoke up. Juror number 30 admitted to searching for the case online. Juror number 9 stated that she overheard information from a person who had Googled the case. The other selected jurors remained silent and the court dismissed them for the day. (D.E. 13-4 at 157.)

The court and the attorneys questioned both juror number 9 and juror number 30 individually. Upon questioning, juror number 9 admitted that what she overheard changed her view on the case. (D.E. 13-4 at 157–63.) The court dismissed her from jury service. The court then questioned juror number 30. Juror number 30 said that he read an online article about the case during the voir dire lunch break. He told the court that he pieced together questions from the voir dire examination with the minimal facts found online and made some presumptions about the witnesses that may testify during trial. Shalouei's counsel asked additional questions to ensure that the online reading had not biased the selected juror. (D.E. 13-4 at 167–172.) Juror number 30 remained on the jury because the court did not find that he was biased.

The trial began on October 20, 2015 and lasted two days. (D.E. 13-4, 13-5.) On the first day of trial, the jury heard testimony from a medical examiner, two crime scene investigators, two patrol officers, the lead homicide investigator, and a co-defendant.

The second day of trial was delayed after Shalouei swallowed a razor blade while in custody. Because an earlier suicide attempt led to a mistrial, the court warned Shalouei that the trial would proceed without him, if necessary. (D.E. 13-6 at 6.)

The jury heard testimony from an officer in the firearms lab, an examiner from the trace evidence lab, the complainant's former coworker, and Shalouei. Prior to Shalouei's testimony and outside the presence of the jury, the court confirmed with the medical clinic that Shalouei was given his prescribed medication that morning. (D.E. 13-6 at 62–63.) Shalouei's counsel told the court that Shalouei wanted to

testify and tell his side of the story. (D.E. 13-6 at 63.) Shalouei testified that he shot at the complainant in an effort to "scare him off" when he saw the complainant pull out a gun. (D.E. 13-6 at 79.)

On cross-examination, the prosecutor asked Shalouei if he remembered telling the police a different version of events in a post-arrest interview. (D.E. 13-6 at 104–05.) Shalouei testified that he did not remember. The lead homicide detective was called to the stand during the State's rebuttal. The State offered the video of Shalouei's custodial interview into evidence. (D.E. 13-6 at 112.)

The jury found Shalouei guilty of capital murder and the court imposed a life sentence. (D.E. 13-2 at 120.)

Shalouei filed a direct appeal and requested appointed counsel. Godinich was re-appointed for the appeal. On appeal, Shalouei challenged the Texas sentencing regime for juveniles. The Fourteenth Court of Appeals rejected that claim and affirmed Shalouei's conviction in March 2017. Shalouei, with Godinich's assistance, filed a petition for discretionary review asserting the same claims. The Texas Court of Criminal Appeals refused the petition.

Shalouei filed a state habeas application in May 2018. He raised claims of ineffective assistance of counsel. (D.E. 13-30.) The trial court issued findings of fact and conclusions of law, recommending that the state habeas application be denied. (D.E. 13-32 at 17–27.) The Texas Court of Criminal Appeals denied Shalouei's application without written order on the findings of the trial court. (D.E. 13-27.)

Shalouei filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on January 8, 2019. (D.E. 8.)

2. *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot

3

grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

3. *Analysis*
   A. *Ineffective assistance of counsel*
      (1) *Legal standard*

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). To establish deficient performance, the petitioner must overcome the strong presumption that the attorney's conduct fell within a wide range of objectively reasonable professional assistance. *Strickland*, 466 U.S. at 690. To establish prejudice, the petitioner is required to show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the criminal proceeding would have been different. *Id.* at 694. If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *See id.* at 697.

4

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

### a. Deficient Performance

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (internal citations omitted). "A court reviewing those choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal citations omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal citations omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

### b. *Prejudice*

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

### (2) *Voir Dire*

Shalouei asserts that his trial counsel failed to challenge biased jurors, which deprived him of his right to a fair and impartial jury trial. (D.E. 8-1.) He also claims that counsel was ineffective because he did not continue to investigate selected jurors for bias.

Following voir dire and after jurors were selected, the court instructed the impaneled jurors not to discuss the case or conduct outside research, and then asked if any jurors had questions. (D.E. 13-4 at 156.) Juror number 9 advised the court that she overheard several people discussing the case during a break in the voir dire examination. Juror number 30 admitted to reading an article about the case during that same break. The court again asked the selected jurors if anyone else had questions and none of the other impaneled jurors spoke up. After individually questioning juror number 9 and juror number 30, the trial court dismissed juror number 9. (D.E. 13-2 at 18.)

Shalouei asserts that counsel should have moved to strike juror number 30 for cause. He maintains that counsel should have determined the identities of the other jurors described by juror

6

number 9 and the identities of any potential jurors with whom they may have discussed the case. (D.E. 8-1.) He also asserts that counsel should have individually questioned each selected juror to determine if any other selected jurors conducted outside research. Shalouei contends that his attorney's failure to move to strike juror number 30 and other unidentified jurors violated his right to an impartial jury.

### a. Juror number 30

The state habeas court found that a challenge for cause regarding juror number 30 would have been unsuccessful. (D.E. 13-32 at 19.) The court pointed to the trial court's finding that "juror number 30 ultimately stated that he would base his verdict upon the evidence he hears in court and not on anything else." *Id.* The state habeas court concluded that Shalouei "fail[ed] to show trial counsel provided deficient conduct [sic] or that he was prejudiced by that conduct." *Id.*

To determine whether counsel's failure to move to strike a juror constituted deficient performance under *Strickland*, the court must first determine whether the juror was biased. *Seigfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (citing *Virgil v. Dretke*, 446 F.3d 598, 608–10 (5th Cir. 2006)). "The bias determination centers on a juror's own indication that she has such fixed opinions that she could not judge impartially respondent's guilt and whether her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath." *Id.* (internal quotations and citations omitted).

Juror number 30 admitted that he read a short article ("maybe 50 words long") that described the case generally. (D.E. 13-4 at 169.) The court questioned the juror about potential biases in several different ways. (D.E. 13-4 at 163–72.) Juror number 30 stated:

> I would never put anyone in prison for 40 years unless I was sure that they were guilty. Regardless of what I thought coming in, if the evidence wasn't

7

> beyond a reasonable doubt, whatever that ends up being, then no, I would never put someone that I wasn't positive was guilty behind bars for 40 years.

(D.E. 13-4 at 171.)

Juror number 30 thus confirmed that his knowledge of the case would not prevent him from making an impartial determination. Shalouei has not shown that juror number 30 was biased. Therefore, he has failed to show that counsel's decision not to move to strike the juror constituted deficient performance or that counsel's decision prejudiced the outcome of the case. Based on the record, Shalouei has not shown that the state habeas court's decision reflects an unreasonable determination of facts or conclusion of law. *See* 28 U.S.C. § 2254(d).

### b. *Unidentified jurors*

Shalouei claims that his attorney was ineffective because he did not question each juror individually "to see if they were involved in the research and discussion of the case" that juror number 9 reported. (D.E. 8-1.) The state habeas court found that Shalouei failed to show that unknown jurors were challengeable for cause. (D.E. 13-32 at 19.) The court reasoned that Shalouei failed to show that trial counsel's conduct was deficient or caused prejudice.

An attorney's actions during voir dire are a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Id.*

When the trial court questioned juror number 9, she stated that she did not believe any of the impaneled jurors were part of the overheard discussion. (D.E. 13-32 at 18; D.E. 13-4 at 158.) Further, the court explained to the impaneled jurors that individual research was not permitted and asked if any jurors had questions. (D.E. 13-4 at

8

156.) Only juror number 9 and juror number 30 admitted that they heard about the case from an outside source.

"Demonstrating that some veniremen may have been biased, without establishing that any of these biased veniremen actually served on the jury, is insufficient to meet the requisite showing or prejudice under the *Strickland* test." *Teague*, 60 F.3d at 1172–73. Shalouei did not establish that any of the unidentified jurors were biased. He did not provide evidence that any impaneled juror took part in the overheard discussion.

Shalouei does not present any facts to indicate that individual questioning would have impacted the outcome of his case. Shalouei does not explain how counsel's failure to individually question each selected juror constituted deficient performance under *Strickland*.

Habeas relief should be denied.

*(3) Failure to File a Motion to Suppress*

Shalouei claims that his attorney failed to move to suppress a custodial statement he made to police. He argues that his statement was involuntary. He also argues that during the interview he requested the presence of his mother or an attorney and that police ignored his request. (D.E. 8-1.) He adds that his mental disorders and age added to the psychological pressure he felt during the interrogation. *Id.*

The state habeas court found that Shalouei's constitutional rights were not violated because he "fail[ed] to show that he would have prevailed on a motion to suppress his statement." (D.E. 13-32 at 20.) The court noted that Shalouei received his statutory warnings and that the statement was used to impeach Shalouei's trial testimony. *Id.*

The court has independently reviewed Shalouei's video-taped custodial statement. The video shows that police administered *Miranda* warnings before taking Shalouei's statement. During the interview, Shalouei denied taking part in the robbery and the

9

shooting. Nineteen minutes in to the interview, it appears that Shalouei mentioned wanting to contact his mother because he had to get to work. Shalouei did not ask for his mother to be present. After twenty-seven minutes, Shalouei told police that he wanted to know when he would go to court and get a lawyer. This is the first time in the twenty-eight-minute video that Shalouei mentioned a desire to meet with a lawyer. The police did not ask Shalouei any questions following his request for counsel and left the room one minute later.

The recording of the interview reveals no evidence that the police coerced Shalouei's statement or that his statement was involuntary. Shalouei did not appear to be under any pressure and did most of the talking. He volunteered information without being prompted. The environment did not appear hostile. Thirty seconds before the police left the interrogation, Shalouei implied that he only cooperated with police because they threatened to charge him with murder. Even if this were true, it is not enough to render Shalouei's statement involuntary based on the circumstances as a whole. *See United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) ("A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will.").

Contrary to his statement to police, Shalouei testified at trial that he shot the victim in self-defense. When asked on cross-examination whether Shalouei lied to police during his interview, he testified that he panicked and "didn't know what else to do." (D.E. 13-6 at 104.) He further testified that he "didn't lie to [the officer] completely." *Id.* The State offered the video tape confession in its rebuttal case to impeach Shalouei's testimony.

Thus, even if counsel had succeeded in a motion to suppress Shalouei's statement, it would have remained admissible for impeachment purposes. *See Bradford v. Whitley*, 953 F.2d 1008, 1010 (5th Cir. 1992) (noting that "it is well-settled that [a defendant's

10

suppressed] statement may still be introduced to impeach his false or inconsistent testimony").

Shalouei does not provide evidence to rebut the presumption that the state habeas court's decision was correct. *See* 28 U.S.C. § 2254(e)(1). There is no indication that his statement was involuntary or coerced. Therefore, the State's use of the statement would have been permitted even were it suppressed.

The state habeas court decision was based on a reasonable interpretation of the facts and law under 28 U.S.C. § 2254(d).

Habeas relief should be denied.

*(4) Competency hearing*

Shalouei asserts that he was incompetent to stand trial and that his trial counsel should have requested a continuance to hold a competency hearing. Shalouei's petition states that on the morning of trial he swallowed a razor blade and prescription medication while in custody, which rendered him unable to understand the proceedings he faced.

The state habeas court determined that Shalouei "failed to show trial counsel was deficient or that [Shalouei] was prejudiced by trial counsel's action." (D.E. 13-32 at 21.) The court also found that he was ordered to submit to a psychiatric medical review prior to trial, based on his claim that he was not receiving his prescribed medication for bipolar disorder. *Id.*

A person is competent to stand trial when he has the capacity to understand legal proceedings and the ability to consult with counsel to assist with his own defense. *United States v. Fields*, 761 F.3d 443, 467 (5th Cir. 2014). In habeas proceedings, courts should only consider incompetence claims if the petitioner demonstrates that facts known to the trial court were "sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (citing *Bruce v.*

*Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976)). "[E]ven if a person is suffering from a severe mental disease or defect or is highly medicated, he will be competent to stand trial if he still has the ability to meaningfully consult with his attorney and he has a rational as well as factual understanding of the charged offense and trial proceedings." *LaHood v. Davis*, 653 F. App'x 253, 259 (5th Cir. 2016).

Shalouei appeared to understand the legal proceedings. In 2014, Shalouei filed a "motion to request extra law library time to prepare for trial." (D.E. 13-2 at 38–44.) Shalouei's federal petition also states that he filed a pro se motion to dismiss his appellate attorney. (D.E. 8-1 at 3.) This indicates that Shalouei understood legal proceedings and supports the state habeas court's findings. Shalouei does not submit evidence to dispute these findings.

Shalouei's behavior during trial is also consistent with the state court's habeas determination. He testified about factual details and answered questions from both attorneys with no trouble. (D.E. 13-6 at 64–109.) Before he testified, the court confirmed that Shalouei had received his prescribed medication. (D.E. 13-6 at 62–63.) Shalouei does not present any evidence to contradict the trial court's findings. *See* 28 U.S.C. § 2254(e)(1).

Shalouei does not explain how the outcome in his case would have changed if his attorney had requested a continuance. Thus, he has not met his burden. The state habeas court's express and implicit findings of fact are not clearly erroneous under 28 U.S.C. § 2254(d).

Habeas relief should be denied.

*(5) Counsel on appeal*

Shalouei claims that his trial counsel "created a conflict of interest when he coerced [Shalouei], while he was incompetent, to be his appellate counsel." (D.E. 8-1.) Shalouei insists that he was incompetent on the day he signed the request for appeal and

12

appointed counsel, and that his trial counsel took advantage of his incompetency to advance counsel's own interests. (D.E. 8-1.)

The state habeas court found that Shalouei's habeas application failed to show that appellate counsel coerced Shalouei or held an interest that conflicted with Shalouei's interest. (D.E. 13-32 at 21.) The court noted that Shalouei did not support his claim with any facts, relying only on conclusory allegations. *Id.*

Shalouei has not shown that the state habeas court's finding is contrary to federal law and has not offered facts to support his claims. His federal habeas petition does not describe a conflict or explain what claim another lawyer would have raised. "Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Koch*, 907 F.2d at 530.

The Sixth Amendment guarantees the right to counsel, but an indigent defendant does not have the right to have the state appoint his preferred counsel of choice. *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016); *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015).

Habeas relief should be denied.

4. *Conclusion*

The court recommends that Davis's motion be granted and Shalouei's petition be denied with prejudice. Shalouei has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Shalouei has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the

undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 9, 2019.

_____
Peter Bray
United States Magistrate Judge